May it please the Court, Jesse Evans Schroeder appearing on behalf of the petitioner Jerezhino Lamont. Mr. Lamont is not present and is not in the custody of the Department of Homeland Security. You have to speak up a little bit louder and go a little bit slower. Yes, Your Honor. Mr. Lamont is not here nor in the country? Nor in the country. All right. I'd like to reserve two minutes for rebuttal. Your Honors, whereas here the Board incorporates wholesale the decision of the immigration judge and adds its own reasoning, this Court reviews both the decision of the immigration judge and the Board of Immigration Appeals. Counsel, let me just get right to the heart of the matter since you only have ten minutes. Why does the record compel us to find that Mr. Lamont's political opinion was a central reason for the persecutions to which he was subjected in 1994 rather than an unfortunate product of gang activity? What in the record compels us to reach the conclusion he wishes to reach? Thank you, Your Honor. There are two primary reasons why the record reflects that the petitioner must prevail on a claim of persecution for political opinion and not for any gang membership or imputed gang membership. The first of these reasons is that the record doesn't contain one shred of evidence that the petitioner was involved in a gang or was targeted because of any imputed gang membership. Rather, the petitioner was found to have credibly testified as to public and substantial political activities. He was a very active member of the People's National Party of Jamaica, the PNP. He testified and was found to be credible that he distributed flyers, spoke on a microphone, raised a flag for the PNP, that he attended rallies, and that he was in the forefront of the PNP. So, wait a minute, in the forefront, was that person who distributes leaflets and goes to rallies isn't usually considered the party leader? I believe that he had... Is that your summary or is that in the record? No, Your Honor. On the record, in testimony, the petitioner testifies that he was in the forefront. In context, I think that it's fair to say that he was a youth, probably an active youth in the PNP party in Jamaica. Yeah. Was there any evidence of a threat to him to discontinue any political activities? Yes, Your Honor. Okay. What I was going to say is... When was that? Well, what happens in this case is that the IJ and the BIA both find that Petitioner asserted he was a gang member, and they refer to page 215 of the record, which is Respondent's or Petitioner's declaration. You see at page 215 that Petitioner declares and is found credible that after being called a PNP member by members of the JLP, they hacked his leg with a machete, they beat him on the head as if they were attempting to kill him, and they told him that they had been watching him for two weeks. The only reason he wasn't killed is because a security guard nearby raised an alarm and he was saved. Two days later, those same JLP members showered his home with 100 rounds of ammunition while he was inside. I think the logical inference is that Petitioner, identified by known JLP members as a PNP member, was targeted on account of his political opinion, and there's no contrary evidence in the record to support otherwise. Well, there's a lot of gang violence, and that's apparently what they found based upon the evidence. But was there any – my question is a little different. I understand that part of the record. I've read it. My question is, was there any specific statement or threat that unless you discontinue your political activity, this will continue on? Your Honor, I don't believe that some statement like that exists in the record. So the fact finder makes a determination that it's gang, not politically record, and then there's the other side. How can we say that there isn't – that we're required under these cases in the Supreme Court – we're required to find something different from what the immigration judge found? Well, this circuit has held in the case – pardon my pronunciation – Duguna v. Ashcroft at 374 F3D 765 that where there's credible testimony and there's no contradictory evidence in the record that a BIA's decision to deny relief based on unsupported speculation will not stand. Your Honors, I'm not saying that this record is so fully developed that all of the questions are answered. But I am saying that the decision by the immigration judge and the Board of Immigration Appeals to say to the petitioner in this case, you asserted that you were a gang member, which is what their decision hinges on, he never made that assertion. And that is clear error. What happens is, and your Honors are familiar with it, the petitioner says that after being beaten by the Jamaican police for several weeks while incarcerated, and after the Jamaican police asserted to criminals in his jail cell that he was a homosexual so as to inspire further beatings, he was, quote, forced to say that I was a PNP gang member. That is the only evidence of record that the petitioner ever acknowledges or was imputed to have any affiliation with gangs. A forced confession is certainly not an assertion of gang membership. And if the judge was inclined to believe that a coerced statement precluded him from relief for asylum or withholding, she should have asked if he was indeed a gang member. This was an unrepresented and uneducated respondent fighting for his freedom and his life in immigration court. Now, Your Honor, your question was, why can he not, why should you not find that he was persecuted for at least one central reason being political involvement? And this is essentially the same question that I've already addressed. But, you know, the bottom line is even if it was legitimate to find that the respondent was somehow involved in a gang or that gang membership was imputed to him, it's an error to find that political opinion was not at least one central reason for Mr. Lamont's persecution. In Elias Zacharias, the United States Supreme Court noted that it is the victim's political opinion and not the opinion of the persecutor that's relevant in these determinations. In Leyva Montalvo, this court found that the applicant for asylum need only show a causal connection between the persecution suffered and their political opinion. Thus, even if, as the agency asserts, the petitioner was part of or imputed to be part of a gang, the petitioner still must prevail because the causal connection between his active political involvement and the persecution inflicted on him is clear. It's beyond question that he was politically involved. It's beyond question that he was targeted by members of the opposing party. Well, you say it's beyond question. That's because you draw certain inferences. It's not beyond question in the sense that at no time did he ever say that someone said, yes, withdraw your political position or we'll continue beating you. Correct, Your Honor. He talked about gang involvement and all the rest of that. That was from him. Correct, Your Honor. I'm saying it's beyond question that he was active politically and it's taken as credible that he was targeted by the opposing party. But you see, the test, according to the Supreme Court, the test is that we have to but compel to find that the immigration judge is wrong. It's a pretty high standard. It's a pretty high standard. But when you look at the immigration judge, when you look at the record as a whole and you find that not one letter supported on behalf of the petitioner, not the testimony by his wife, not the petitioner's own testimony, reflects any involvement in gangs or that anyone ever said that he was a PNP gang member except on one occasion when he was forced to say so by under extreme duress after being beaten for several weeks by the Jamaican police, I think that it's clear error for the judge to say in her own decision that he asserted that he was a gang member. It's simply not the case. And that's what her decision rests on. I'll reserve the rest of my time. Good morning, Your Honors. May it please the Court. Michael Heiss on behalf of the Respondent to the Attorney General of the United States. Petitioner in her opening argument here, again, waived any argument that regarding his or her client's ability to relocate within Jamaica as both the immigration judge and the board found. So that is potentially dispositive here. How do you answer her statement that it was a coerced convention after weeks of beating and by the Jamaican police and they coerced him into saying he was a gang member? I think that's actually ultimately almost irrelevant in and of itself. I mean, it's relevant as to whether he was politically active or whether he's a gang member. That's certainly relevant evidence. But I believe in Ines v. Elias Zacharias, the Supreme Court stated that the persecutor's motive is more critically important. It's why they did what they did. It's all part of a collective inquiry. But whether or not he's a gang member is actually really not the problem here. The problem is whether or not the persecutors, the alleged persecutors, did what they did based on a political opinion or some other protective ground. Then I'd like to ask you another question. Why doesn't Mr. Lamont's testimony that the JLP attacked him with a machete, fired into his house, combined with the JLP's shooting of his younger brother and the retaliatory murder of his nephew, compel us to conclude that it's more likely than not that Mr. Lamont will be tortured in Jamaica? I'm moving to the cat claim. Okay. Well, it's relevant to either the withholding or the cat claim, but at least in terms of the substantial evidence standard that has to be applied that Judge Wallace was discussing earlier, it's whether the record compels a contrary result, and it's a question of weighing the evidence. Petitioner in the opening brief claims that the agency improperly weighed the evidence, and this Court in Sing plainly stated under the substantial evidence standard evidence cannot be re-weighed, and that the record could compel a contrary result isn't enough. It must compel the contrary result. No reasonable fact finder could find otherwise for the substantial evidence standard to be met, and we simply don't have that here. As has been discussed here, it's indicative of gang violence, and as Petitioner himself stated, gangs and politics are apparently intertwined in Jamaica. So it's potentially one or the other, but what we have here is simply no evidence to suggest it is definitely his political opinion or one central reason for the persecution he endured was the fact that he held a political opinion. We also have a confusing situation here regarding whether or not his present fear is reasonable, given that his brother and his nephew were assaulted, shot, and his brother's attacker was brought to trial. So it doesn't make any sense that the Jamaican government wouldn't be willing to protect him, especially in terms of a cat protection agreement. Was he convicted? Yes. Yes, there was a conviction. And that was, again, the reason for the retaliation afterwards was because the brother testified against his attackers. So, but again, that's the government. That's the Jamaican government protecting him. It's protecting his family in any event, so it doesn't make sense that they would do this investigation and prosecution of a family member but not help him under what he claims to be basically the exact same fear. That's simply not reasonable. He might subjectively believe that he holds this fear. And that's what the agency found. He credibly testified he actually believes these things, and that's fine. But he must also establish that his fear is objectively reasonable. And he simply failed to do that, and that's a question of the weight of the evidence and a substantial evidence standard. This Court cannot go back behind the agency and reverse that unless the record compels a contrary result, and we simply don't have that here. I didn't hear any discussion of the social group issue that was raised as well. If Your Honors have any questions about that, I'm happy to answer it. The Court has – this Court has previously accepted that the social visibility and particularity standards are valid. There's a mild challenge to that in the opening brief. In Arteaga, this Court accepted the matter of AME and JGU standards of that. The Tenth Circuit in Rivera-Barrientos accepted that those interpretations of – Were aware that the Third Circuit did not. Yes. And that this Court has granted an in-bank hearing in Enriquez-Rivas. I had not – I had not heard about that, Your Honor. And we're going to have to take a look at whether social visibility and particularity are inconsistent with the BIA's Acosta ruling. And if inconsistent, perhaps Chevron doesn't apply? Well, that's the question that was addressed in Rivera-Barrientos. I would presume that our arguments will be the same that were presented there, that those are a valid interpretation of an ambiguous – that the term particular social group is not defined under the INA, and that's therefore an ambiguous term, and the agency is entitled to attempt to reasonably interpret what that phrase means and give it its ordinary meaning. So what is the evidence? If this Court were to go back to Acosta, the standard being unalterable characteristics, what is your view as to whether there are any unalterable characteristics in Mr. Lamont's case? Well, I don't think that's necessarily the end of the inquiry. If it's just an – Acosta, I believe, was released – AME and JGU were considered to be an extension of Acosta. So whether or not it's an immutable characteristic, I think this Court's definition in Arteaga of a social group, which is a voluntary association, which imparts some common characteristic that is fundamental. So what's your view of the evidence as to whether he belongs to a particular social group? I'm sorry? What is your view as to the evidence as to whether Lamont belongs to a particular social group? What we have – again, we're basing it on the rubric under AME and JGU. The finding was that it lacked particularity and social visibility. It would not be for this Court to state – if the old standard exclusively were to apply, the Court would have to remand for discussion whether or not that has been met. That's a question of fact-finding. So if that's the issue here, then, yes, the Court would have to remand to discuss – decide whether or not his past persecution was on account of that protected ground or the fear he has a future persecution would be on account of that protected ground. However, again, I go back to the relocation finding, again, to which we have no challenge here. That is potentially dispositive. Under the regulations 8 CFR 1208.13 B2II, if the alien can safely relocate, then his well-founded fear is rebutted. His mother lived safely in the Jamaican countryside. We have no argument presented here that he can't do the same. So that would obviate all of this. Wasn't there evidence that the mother lived in the countryside but feared for her wife coming to town and, therefore, when he comes occasionally to get supplies, that it's not really safe? Well, that was his statement. But we don't have any further evidence to confirm that or to confirm the extent of what that means. And, again, we don't have any argument in the opening brief here. So that's waived. We can't really get into that. We don't have anything to talk about. Yes, there is evidence in the record that he's stating that his mother has difficulty going into town. But, nonetheless, we don't have a letter from her. We don't have an affidavit from her. We simply don't have any evidence beyond his own statement. And then we have nothing. But his own statement is entitled credibility if the credibility finding favors him, correct? It's evidence, yes. It's certainly relevant evidence. But, again, it's a question of its weight. It's a question of whether or not it would be enough to rebut the finding that he can safely relocate. There's no evidence that he would feel the same way his mother does, necessarily, or that he'd be under the same danger that she would. The simple fact of the matter is that she lives in the countryside safely and has done so for so many years. He claims that if he goes back to any part of Jamaica, he cannot relocate safely, correct? That's his claim, yes. And that's subject, yes. His claim is entitled to credibility. Yes. That, again, is whether or not it's a substantively reasonable fear and an objectively reasonable fear. And that is a question of the weight of the evidence. An immigration judge reviewed all of this evidence and said it was not enough. It said under the regulation he can safely relocate. He failed to meet his burden of rebutting that he can't. I'd like to go back to one other issue. Are you familiar with the case of Parous and Mova versus Hassi? It deals with a reason that suppose gang membership was part of the reason. Yes. But isn't the fact that his political support for PNP is a central reason for past persecution? And that particular case says an asylum applicant need not prove that a protected ground was the only central reason for the persecutions. The Real ID Act requires that a protected ground serve as one central reason for the persecution. Yes. Why should we consider that as one central reason with all the evidence about his participation? Well, again, this is weight of the evidence. It's whether or not his participation was enough for that to make any sense. Whether or not the immigration judge accepted that his political opinion was the reason he was being targeted. Again, as Petitioner stated, gangs and politics are intertwined. So it does make it difficult to decide which is which. But ultimately, the question is whether or not he met his burden of proof, and it's the weight of the evidence as to whether or not he was targeted because they're a gang or because he was a gang member or whether or not he was a gang member, whether they thought he was. All of this is just kind of a plug, and it's up to the immigration judge to wade through it and pick out why this happened, whether or not it is one central reason for the persecution. One final question. When the immigration judge said he said he was a gang member, when the evidence was that it was coerced confession, how do you respond to that? Again, I don't think that's particularly relevant. I mean, it's relevant in that as to why he might have endured what he did in the past, but ultimately it's why he was targeted that matters, why he was persecuted, why they shot him, why these things happened to him. And if that 1994 incident in and of itself is found to be past persecution on account of a protected ground, then he might be entitled to the presumption of future persecution that the government would have to rebut, and this Court would need a remand for the agency to consider in the first instance whether or not the agency or whether or not the government can rebut that presumption except that we have the relocation finding. So I keep coming back to that. If the Court wants to disregard the relocation finding, then, yes, there's going to have to be a remand here for some further fact-finding. If the Court doesn't have any further questions. Thank you, Your Honor. Your Honors, I've reserved a short amount of time for rebuttal, but I don't think that I have very much to add. If you have any other questions. How about discussing the relocation finding? Your Honor, again, that's another factual error that exists in the record, and I think it's a glaring factual error in this record. If you read through the transcripts of the hearing, the Respondent and his wife both state that the brother has attempted to relocate and to live with friends, but that no one has been able to talk to him since then. The immigration judge, contrary to the credible evidence of record, finds that the brother has safely relocated. As to the mother, the evidence in the record is actually ambiguous. The wife states that she spoke with the mother some weeks ago and that she expresses some fear. The petitioner states that he has not had contact with his mother. We don't know the timeframe for that. Your opposition said that you'd exercise no opposition to the relocate theory in your brief. Is that correct? No, Your Honor. In the brief, the petitioner does raise an objection to the agency's finding that he can safely relocate, primarily in his argument for protection under the Convention Against Torture. Our position is that there's no logical difference between saying that you cannot relocate from torture to saying that you cannot relocate from persecution, which is a lesser form of harm. The proper point of his argument was that if it hasn't been raised, then it can't be argued here. If there's no opposition, then there's no opposition. Well, I don't believe that there is no opposition, Your Honor. In addition to that — At what page would I look in your brief where you did raise the issue that he can relocate safely? Your Honor, the petitioner argues — Just the page number, please. In page 29 and page 30, primarily, that he cannot safely relocate. Okay. I'll read it. Thank you. Any other questions? Thank you. The case of Lamont v. Holder is submitted.
judges: Wallace, Nelson, Bea